## No. 13,422.

HARTFORD ACCIDENT AND INDEMNITY COMPANY *v.* COLORADO
NATIONAL BANK OF DENVER.

(40 P. [2d] 254)

Decided December 31, 1934.

128

Messrs. WEBSTER & DRATH, for plaintiff in error.

Messrs. BARTELS, BLOOD & BANCROFT, Mr. WALTER W. BLOOD, for defendant in error.

*In Department.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

PLAINTIFF in error was plaintiff in the trial court; in this opinion we will refer to it as the Indemnity Company, and to defendant in error as the bank.

The Indemnity Company had executed a surety insurance contract as surety for the Prey Brothers Livestock Company, herein called the Commission Company, insuring to all shippers the payment of such proceeds as would be due them from the sale of livestock consigned to the Commission Company. In July, 1931, various shippers were not paid for such shipments by the Commission Company, and the amounts due them were in turn paid by the Indemnity Company under its surety contract. The Indemnity Company, claiming that the bank had taken the proceeds due such shippers, and deposited by the Commission Company, for the liquidation of indebtedness due the bank from the Commission Company, brought suit against the bank and sought to be subrogated against the bank to the rights and remedies of the shippers.

■■ By a lengthy complaint, the Indemnity Company alleged in detail transactions between the bank and the Commission Company relating back as far as the year 1910. The bank moved to strike certain portions of the complaint, and much of it was ordered stricken. The complaint, being amended, was again subjected to a motion to strike. The court sustained the motion in part, but allowed general allegations concerning banking relations between the Commission Company and the bank between the years 1910, and July 31, 1931; also as to the knowledge of the bank of the particular business of the Commission Company as a depositor; and the deposit of the Commission Company's funds in the checking account, to remain in the amended complaint. The Indemnity Company did not stand on its complaint as amended and the bank was required to answer. The Indemnity Company filed its replication, and, as the bank contends, attempted to reallege the matter stricken from the complaint and its amendment. The bank successfully moved to strike such from the replication. The Indemnity Company then refused to proceed further, the bank moved for dismissal and the motion was sustained. Such a judgment is final as to every issue that could have been tried in the case. There was an issue of fact with no evidence and the judgment properly went against the Indemnity Company which had the burden of proof.

■ This case stands upon the pleadings. The Indemnity Company assigns 21 alleged errors, 15 of which relate to the striking of portions of its amended complaint. It did not stand upon these rulings. The bank was required to, and did, answer. The Indemnity Company filed its replication and in thus proceding further, it waived any error in the sustaining of the motions to strike, under the long settled rule in this state. Four of the remaining assignments of error relate to the court's action in sustaining motions to strike parts of the replication apparently based upon the ground that the stricken portions were simply a repetition of the

allegations eliminated from the amended complaint. If the Indemnity Company had a cause of action against the bank it was necessary only to plead the nature of the business of the Commission Company; its checking account with the bank; knowledge by the bank of the nature of the Commission Company's business; that funds of shippers were placed in the Commission Company's acount; and the appropriation of such funds by the bank in payment of an indebtedness of the Commission Company to the bank. Thus pleaded, the case would have been brought within the rule laid down in *Union Stock Yards Bank v. Gillespie,* 137 U. S. 411, 11 Sup. Ct. 118, 34 L. Ed. 724, relied upon by the Indemnity Company, and which seems to be in accordance with the law applicable to cases of this nature. It was of course necessary for the Indemnity Company to plead further facts necessary to sustain its claim to the right of subrogation. The bank transactions relied upon for recovery in this case are confined to the month of July, 1931, and the failure of the Indemnity Company by its pleadings to trace the funds equitably belonging to the shipper or shippers into the bank and which, it is alleged, were applied by the bank to the extinguishment of any debt of the Commission Company to it, with knowledge of the identity of such funds, deprives the Indemnity Company of the right to recover in this case, and destroys its right to subrogation if any it had. Subrogation is a creature of equity, the doctrine being established as a matter of necessity for the purpose of administering essential justice. The shippers in this case, as we will later briefly show, could not have recovered from the bank, hence no greater right would accrue to their substitute.

By its original complaint, the Indemnity Company set out many matters relating to events occurring prior to July, 1931, but alleged that the proceeds from commission sales made in the month of July were never paid to the shippers by the Commission Company's

check, but were in turn paid by the Indemnity Company under its insurance contract, and it is the amount of these July sales that it seeks to recover. It alleged that the particular wrong to these shippers growing out of the July, 1931, transactions and for which it seeks to recover, by subrogation, was the taking by the bank of the funds of these shippers, which were deposited to the credit of the account of the Commission Company, and using them for the extinguishment of overdrafts of the Commission Company. Such overdrafts, it is said, were on July 21, and July 27 to 31, inclusive; thus the alleged wrong of the bank is confined to this period. Whatever might have happened between the Commission Company and the bank prior to July, 1931, as alleged by the Indemnity Company, was of no concern to it unless, by reason thereof, a loss occurred for which it became liable and had to pay. Such allegations had no place in the statement of any cause of action against the bank.

The bank permitted overdrafts by the Commission Company, according to the allegations of its answer, as a convenience to the shippers and in the belief that it was paying shippers entitled to payment and before deposits had been made from the sales proceeds. It is well to bear in mind that the Indemnity Company was liable to all shippers, and that this alleged custom of the bank in allowing overdrafts for the payment to shippers, was in fact a payment, by sufferance, of the Indemnity Company's continuing liability to shippers. The bank by its answer alleges that it did not appropriate any funds to pay any debt to itself, but it permitted the Commission Company's account to vary from the line of balance in accepting deposits and paying checks; that while it had general knowledge of the Commission Company's business, it did not know, and had no means of knowing, what particular shippers' funds were deposited with it. The record shows that for the month of July as a whole, it paid out more in the handling of this account than it received from all sources. It was the bank's duty to pay,

from funds on hand, all checks drawn by the Commission Company to the order of others and the Indemnity Company could not complain of such payments. The answer further alleges that defendant did not know that any funds deposited in July, 1931, represented any particular commission sales; that it did not know what shipper, if any, might be entitled to the funds; that the commission account was not made up exclusively of shippers' funds; that it did not appropriate the funds of any known shippers to discharge any overdraft during the month of July, but believed that the Commission Company was paying its shippers; that at the close of the month of July, the bank closed the checking account of the Commission Company, permitted the withdrawal of the credit balance and refused to accept further deposits. It denied all allegations of bad faith.

For the reason heretofore intimated, there is no liability on the part of the bank because of the failure to identify and trace into the bank the funds of any particular shipper or shippers, and for the further reason that the bank, during the period of which complaint is made, paid out more money than it received.

"A bank which takes from a factor or commission merchant, in payment of his individual debt, moneys which it knows equitably belong to his consignor and principal, is accountable to the consignor, so long as the money can be traced and identified in the original or in a substituted form." 5 Banks and Banking (The Michie Co., 1931-2), p. 266, c. 9, §137.

"Where a factor or commission merchant deposits the proceeds of sales for his principal in a bank to his own credit, and draws out the same on his individual checks, his principal can not recover the amount so drawn out from the bank." 5 Banks and Banking (The Michie Co., 1931-2), p. 167, c. 9, §78.

The Indemnity Company, during all of the long period in which it was the insurer of the good faith of the Commission Company to its shippers, could, upon 10 days'

notice, have cancelled its insurance and ended its risk, but it failed to do so. In allowing the varying overdrafts occasioned by payment of sales proceeds to shippers, the bank was from day to day paying the liability of the Indemnity Company, and since the bank was not an insurer of good faith of the Commission Company to its consignors, it made no difference what overdraft was paid nor when the account was closed.

The rulings of the trial court were right and its judgment is affirmed.

MR. CHIEF JUSTICE ADAMS and MR. JUSTICE HILLIARD concur.